IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


CHARLES IHENACHO,                          :

    Plaintiff,                              :
                               Case No. 3:08CV390

        vs.                             :
                               JUDGE WALTER HERBERT RICE

GREEN TOKAI CO. LTD.,                       :

    Defendant.                             :

---

DECISION AND ENTRY SUSTAINING, IN PART, AND OVERRULING,
IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC.
#14) AND OVERRULING DEFENDANT'S MOTION TO STRIKE (DOC.
#17); DIRECTIONS TO COUNSEL REGARDING FILING OF
SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

---

The Defendant, Green Tokai Co. Ltd. ("GTC"), hired the Plaintiff, Charles

Ihenacho, in August 2007.  In 2003, prior to beginning work at GTC, Ihenacho

sustained abdominal injuries in an automobile accident.  In early April 2008,

Ihenacho requested unpaid medical leave for surgery related to these abdominal

injuries, commencing May 5, 2008, with an anticipated return date of June 2,

2008.  Also in early April 2008, Ihenacho injured himself at work and requested

unpaid medical leave from April 3-May 16, 2008, to tend to his work-related

injuries.  GTC approved all of these requests for medical leave.

Ihenacho's physician, Dr. Ugo Nwokoro, treated him for both his abdomen

problems and his work-related injuries.  In the end, Ihenacho never had the

previously scheduled abdominal surgery, due to complications from the work-related injuries.

On May 20, 2008, Dr. Nwokoro informed Ihenacho that he could return to work without restrictions on May 27, 2008. With Ihenacho's knowledge, the doctor also sent GTC a report whereon he indicated that Ihenacho could return to work on May 27th. Sometime after May 20, 2008, Ihenacho took a trip to Nigeria to see his family, returning on May 29, 2008. On June 2, 2008, GTC terminated Ihenacho for excessive absenteeism, having expected him back to work on May 27, 2008, per Dr. Nwokoro's report. Sometime that same day (June 2, 2008), Ihenacho was examined by Dr. Nwokoro, who completed a paper indicating that Ihenacho could return to work without restrictions that day. It is unclear when GTC became aware of this document.

Ihenacho brings suit, alleging the following three claims: (1) that GTC wrongfully terminated him "in violation of public policy and Ohio law, amounting to tortuous conduct in derogation of ORC 4123.90"; (2) "[Family Medical Leave Act ("FMLA")] interference[, in] violation [and] in derogation of 29 CFR Sect[ion] 825 et seq."; and (3) promissory estoppel. Doc. #2 (Compl.). The Court has federal question jurisdiction under 28 U.S.C. § 1331, with supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367. Doc. #1 (Not. of Removal) ¶ 5.

As to the Motions presently before the Court, GTC purports to move for summary judgment on all of Ihenacho's claims. Doc. #14. In its Motion, GTC

identifies these claims as follows: (1) termination in violation of public policy; (2) FMLA interference; and (3) promissory estoppel. Id. In his memorandum opposing GTC's Motion for Summary Judgment, Ihenacho states that his Complaint asserts claims for the following: (1) termination in violation of public policy; (2) retaliation under Ohio Revised Code § 4123.90; (3) FMLA interference; (4) FMLA retaliation; and (5) promissory estoppel. Doc. #15. In response, GTC has moved the Court to strike from Ihenacho's memorandum in opposition any reference to "his unasserted statutory claim of retaliatory discharge in violation of [Ohio Revised Code] § 4123.90 or his unasserted FMLA retaliation claim." Doc. #17.

The Court will begin with a review of the pertinent facts of this case. It will then analyze GTC's Motion to Strike, followed by a consideration of the merits of its Motion for Summary Judgment.


I.      Facts[1]

GTC hired Ihenacho as an at-will employee, in August 2007. Doc. #14-1 at 9, 10 (Ihenacho Dep. at 33,40); id. at 78 (Employee Handbook). One of GTC's employment practices, of which Ihenacho was aware, was to terminate employees who were excessively tardy or absent. Id. at 11 (Ihenacho Dep. at 41).

---

[1]Since this case comes before the Court on the Defendant's Motion for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff, as the party against whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

Prior to beginning employment with GTC, Ihenacho sustained abdominal injuries in an automobile accident. Id. at 6-7 (Ihenacho Dep. at 19-20). On April 4, 2008, Ihenacho applied for and GTC approved medical leave for abdominal surgery, beginning on May 5, 2008, with an "anticipated return" date of June 2, 2008. Id. at 82-87 (1st Med. Leave Request); id. at 21 (Ihenacho Dep. at 82); Doc. #14-2 (Kauffman Aff.) ¶3. The medical leave request packet that Ihenacho submitted contained the following language:

> I understand that my leave will end on the first day I am able to return to work as certified by my physician. I recognize my physician's date of anticipated return is tentative; however I agree to supply the company with an amended physician's certification in the event this date is changed. If I do not return from my leave on the date specified, I will be considered as having voluntarily resigned. The doctor's certification is the final arbitrator for the onset, and the termination of the leave itself.

Doc. #14-1 at 27 (Ihenacho Dep. at 90); id. at 82 (1st Med. Leave Request). Attached to Ihenacho's request for medical leave was a certificate from his physician, Dr. Ugo Nwokoro, attesting to the need for and dates of the surgical procedure. Id. at 85-87 (1st Med. Leave Request). While he was out on medical leave, the scheduled abdominal surgery was cancelled, due to complications from the injuries he sustained in the work accident described below. Doc. #15-3 at 29-31 (Ihenacho Dep. at 79-81).

The day before Ihenacho submitted his request for leave for abdominal surgery, April 3, 3008, he injured his hip and side, in a work-place accident. Doc.

#14-1 at 14-17 (Ihenacho Dep. at 44-47). As a result of this injury, Ihenacho filed a claim for workers' compensation benefits. Id. at 18 (Ihenacho Dep. at 59). Ihenacho also requested medical leave for the injuries he sustained in the work-place accident, first asking for leave from April 3-11, 2008, and then asking for an extension until May 16, 2008. Id. at 23-26 (Ihenacho Dep. at 86-89); id. at 89-94 (2nd Med. Leave Request); id. at 102-07 (3rd Med. Leave Request). The company granted both requests and Dr. Nwokoro once again completed the necessary paperwork, attesting to the medical necessity for the requested leave days. Id. at 89-94 (2nd Med. Leave Request); id. at 102-07 (3rd Med. Leave Request).

On May 20, 2008, Ihenacho had an appointment with Dr. Nwokoro (who was now treating him for both his stomach condition and his hip/side injury). At this time, Dr. Nwokoro informed Ihenacho that he could return to work without restrictions on May 27, 2008. Id. at 29-30 (Ihenacho Dep. at 93-94). The doctor also completed a "Physician's Report of Workability" (which appears to be a Bureau of Workers' Compensation form), whereon he indicated that Ihenacho "[m]ay [return to work with] with no restrictions on 5/27/08," and sent said report to GTC. Id.; id. at 111 (Workability Rpt.); Doc. #14-2 (Kauffman Aff.) ¶ 4. There is no indication on the report that the doctor's instructions were specific to one or the other or both of the conditions for which he had been treating Ihenacho while on medical leave. Ihenacho knew that the doctor sent a copy of the report to GTC. Doc. #14-1at 30 (Ihenacho Dep. at 94).

Sometime after his visit to Dr. Nwokoro, on May 20, 2008, Ihenacho took a trip to Nigeria to see his family, returning on May 29, 2008. Id. at 20 (Ihenacho Dep. at 75). When asked why he went to Nigeria, Ihenacho responded that he "rushed to see [his] parents" because he was "scared [he was] going to die," because of his health conditions. Doc. #15-3 at 30-31 (Ihenacho Dep.) at 80-81.

GTC relied on the Physician's Report of Workability it had received from Dr. Nwokoro and expected Ihenacho to report to work on May 27, 2008. Doc. #14-2 (Kauffman Aff.) ¶ 5. When he did not report to work on that day, GTC began charging attendance points for the days he did not attend work. According to GTC, by June 2, 2008, he had accumulated sufficient points to warrant termination (e.g., he "pointed out") and, thus, he was terminated. Id. ¶ 6. According to Ihenacho, he clocked in at work on June 2, 2008.[2] Doc. #15-3 at 37

_____

[2]GTC, on the other hand, argues that Ihenacho did not clock in on June 2, which was apparently the last day to count towards "pointing out". Doc. #16 (Reply Mem.) at 8. In support thereof, it has entered onto the record what purports to be a time clock report. Doc. #16-2 (Time Clock Rpt.). The Court has two concerns about this document. The first is that the Defendant has pointed to nothing to authenticate it. The second is that although the top margin of the report states it is "punch detail for 8/6/2007 - 6/2/2008," there is no line entry in the body of the report for June 2, 2008, the last such entry being for May 25, 2008. Doc. #16-2

GTC also contends that Ihenaco testified that he left his home in an attempt to go to a 3:00 p.m. doctor's appointment on June 2nd and then returned to his home after not having located the doctor's office. Doc. #16 (Reply Mem.) at 7. Thus, GTC continues, Ihenanco could not have reported to his second shift work assignment, which commenced at 3:00 p.m. that day. Id. at 7 n.5. In support of this argument, GTC points to various pages of Ihenaco's deposition and to Exhibit L thereto. None of the suggested materials are on the record, however.

As noted, neither the argument pertaining to the time clock report nor the

6

(Ihenacho Dep. at 104).

On this same day (June 2, 2008), Ihenacho was examined by Dr. Nwokoro, who then signed a short, preprinted form, on which he marked the block that corresponded with the entry "[h]e can return to work without restriction" and also made a hand-written annotation that says "Workers Comp".[3] Doc. #15-1 at 14 (Form, dated June 2, 2008); id. at 16 (noting doctor's exam occurring on June 2,

---

argument pertaining to Ihenaco's doctor's appointment, on June 2, 2008, is supported with evidence of record. Therefore, the Court will not rely on the same when ruling herein.

[3]The parties point to several documents that do not turn out to be helpful to their cases for various reasons. For example, the Plaintiff points to a preprinted form from the Bureau of Workers Compensation that is entitled "Request for Temporary Total Compensation" and is dated June 2, 2008. Doc. #15-1 at 15-16. On this form, Dr. Nwokoro has noted an "actual" return to work date of June 2, 2008. It is unclear how the doctor learned that Ihenacho had been or would be reporting to work that day, so the Court has not relied upon the form when ruling herein. Furthermore, the report does not indicate a date that the doctor released Ihenacho to return to work (in contrast to the date he actually returned to work) and is not addressed to GTC.

The Plaintiff also argues that he was examined by Dr. Susan Rice, on July 14, 2008, apparently as part of the worker's compensation process. Doc. #15 (Def.'s Mem. Opp'n) at 4-5. The Plaintiff states that "[Dr. Rice] indicated that his protuberant abdomen suggests that it is possible he needed time of[f] work for FMLA between May 5, 2008 and June 2, 2008" and cites the third page of Dr. Rice's report, in support thereof. Id. However, the third page of that report has not been entered onto the record. See Doc. #15-1 at 17-19.

In support of its argument that Dr. Nwokoro released Ihenacho to return to work during his visit to Dr. Nwokoro on May 20, 2008, the Defendant points to Exhibit A, which is attached to its Reply Memorandum. While Exhibit A is a clinical report for a reevaluation visit that Ihenacho made to Dr. Nwokoro, the only date/time noted on the report is "Mon, Jun 02 2008 11:21 am," which seems to indicate that the visit occurred on June 2, 2008, rather than on May 20, 2008. Doc. #16-1 at 1.

2008); Doc. #15-3 at 51 (Ihenacho Dep.) at 151.  This document is not addressed to GTC and there is no evidence on the record to indicate whether GTC became aware of it prior to the instigation of the present litigation.

II.    Motion to Strike

The Defendant has moved to strike any reference to the "unasserted" claims of retaliatory discharge in violation of Ohio Revised Code § 4123.90[4] and FMLA retaliation, from the Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment. Doc. #17.  In sum, the Defendant argues that the Plaintiff's Complaint does not assert either of these claims, that he has not requested to amend his Complaint and that it is not permissible for him to assert new claims at the summary judgment stage in an effort to avoid summary judgment.

Taking these assertions in reverse order, the Court concurs that a plaintiff may not assert new claims in his summary judgment memoranda.  In order to add new claims to a complaint, at this stage of litigation, a plaintiff must receive permission to amend his complaint, either by acquiring the defendant's written consent or with leave of Court. Fed. R. Civ. Proc. 15(a)(2).  In the present case, the Plaintiff has done neither (instead, the Plaintiff asserts that the Complaint

---

[4]Ohio Revised Code § 4123.90 forbids employers from discharging employees because they file workers' compensation claims.

8

adequately sets forth the challenged claims).  Thus, the Court must determine

whether the Complaint states claims for retaliatory discharge in violation of Ohio

Revised Code § 4123.90 and FMLA retaliation.

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must

contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. Proc. 8(a)(2).  Therefore, the Court will review the

challenged provisions in the Complaint to determine whether they contain "short

and plain statements" of the challenged claims.

As to the claim for retaliatory discharge in violation of Ohio Revised Code

§ 4123.90, Count I of the Complaint reads as follows: "<u>Defendant has wrongfully</u>

<u>terminated Plaintiff in violation of</u> public policy and <u>Ohio law</u>, amounting to

tortuous conduct <u>in derogation of ORC 4123.90</u>." Doc. #2 at 2 (emphasis added).

The Court agrees that a claim alleging a violation of Ohio Revised Code § 4123.90

(which, among other things, prohibits an employer from discharging an employee

for filing a workers' compensation claim) could certainly have been stated more

clearly than this.  However, the Court concludes that the language, as underlined,

is sufficient to pass muster as a short and plain statement of a claim for retaliatory

discharge in violation of Ohio Revised Code § 4123.90.

With regard to the challenged claim for FMLA retaliation, Count II of the

Complaint reads as follows: "Defendant[']s conduct of terminating Plaintiff while

on an approved FMLA leave due to his medical condition <u>amounts to [FMLA]</u>

9

interference[, in] violation [and] in derogation of 29 CFR Sect[ion] 825 et seq." Doc. #2 at 2 (emphasis added).  Part 825 of Title 29 of the Code of Federal Regulations pertains generally to the FMLA.  The Sixth Circuit points out that there are two theories of recovery under the FMLA, to wit: the "'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1)" and the "'retaliation' or 'discriminatory' theory arising from 29 U.S.C. § 2615(a)(2)." Grace v. USCAR, 521 F.3d 655, 669 (6th Cir. 2008).  Despite the fact that § 2615(a)(2) speaks specifically about "discharge" and the Sixth Circuit refers to it as the "retaliation" theory of recovery, that Court has recognized that claims for retaliatory discharge can be brought as either "interference" claims, under § 2615(a)(1), or as "retaliation" claims, under § 2615(a)(2).[5] Wysong v. Dow Chem. Co., 503 F.3d 441, 447 n.2 (6th Cir. 2007) (noting that, in the Sixth Circuit, retaliatory discharge is cognizable under both § 2615(a)(1) and §2615(a)(2)); contrast id. at 446-47

_____

[5]Section 2615 of Title 29 covers acts that are prohibited by the FMLA. Paragraph (a) of that Section sets forth the prohibitions that are pertinent to the question presently before the Court, as follows:

(1)  Exercise of rights.  It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS §§ 2611 et seq.].

(2)  Discrimination.  It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title [29 USCS §§ 2611 et seq.].

29 U.S.C. § 2615(a).

(analyzing FMLA retaliatory discharge claim as interference claim) and <u>Arban v.</u>

<u>West Publ'g Corp.</u>, 345 F.3d 390, 403 (6th Cir. 2003) (analyzing FMLA retaliatory

discharge claim as retaliation claim).

Once again, the Court agrees that a claim alleging FMLA retaliatory

discharge could have been stated more clearly than it is in the present Complaint.

However, the Court concludes that the language is sufficient to pass muster as a

short and plain statement of a claim for retaliatory discharge, in violation of the

"interference" provision of the FMLA.

Therefore, the Defendant's Motion to Strike (Doc. #17) is OVERRULED, with

regard to both the claims for retaliatory discharge in violation of Ohio Revised Code

§ 4123.90 and the FMLA.


III. <u>Motion for Summary Judgment</u>

A. <u>Summary Judgment Standard</u>

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>

<u>v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

11

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

12

resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . .").  Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its

attention by the parties.

B.    Application of Summary Judgment Standard to Present Case

In its memorandum in support of its Motion for Summary Judgment, the Defendant moves for summary judgment on three of the Plaintiff's claims, to wit: (1) termination in violation of public policy; (2) FMLA interference; and (3) promissory estoppel. Doc. #14.  In his memorandum in opposition to said Motion, the Plaintiff clarifies that his Complaint also contains claims for retaliatory discharge in violation of Ohio Revised Code § 4123.90 and FMLA retaliation. Doc. #15.  The Defendant then attempts to move for summary judgment on said claims, in its reply memorandum, and also (as previously addressed) moves to strike the same. Docs. #16, #17.

The Court will begin with an analysis of the parties' arguments pertaining to the claims for termination in violation of public policy and FMLA interference.  It will then consider the Defendant's attempt to move for summary judgment on the claims for state law retaliatory discharge and FMLA retaliation.  Finally, it will consider the Defendant's Motion, as it pertains to the claim for promissory estoppel.

1.    Termination in Violation of Public Policy

As to the claim for termination in violation of public policy, the Plaintiff has

14

conceded that this is no longer a viable claim. Doc. #15 at 10.  Thus, the Court

SUSTAINS the Defendant's Motion for Summary Judgment (Doc. #14), as it

pertains to the Plaintiff's claim for termination in violation of public policy.  The

Court will now turn to an analysis of the Plaintiff's FMLA interference claim.


       2.   <u>FMLA Interference</u>

Section 2615 of Title 29 of the United States Code provides that it is

"unlawful for any employer to interfere with, restrain or deny the exercise of or

attempt to exercise, any [FMLA right]." 29 U.S.C. § 2615(a)(1).  To prevail on an

interference claim (also known as an "entitlement" claim), an employee must prove

the following:

      (1) [he] was an eligible employee,

      (2) the defendant was an employer as defined under the FMLA,

      (3) [he] was entitled to leave under the FMLA,

      (4) [he] gave the employer notice of [his] intention to take leave, and

      (5) the employer denied the employee FMLA benefits to which [he]
         was entitled.

<u>Grace v. USCAR</u>, 521 F.3d 655, 669 (6th Cir. 2008) (citing <u>Edgar v. JAC Prods.</u>,

443 F.3d 501, 507 (6th Cir. 2006)).  For purposes of the present Motion for

Summary Judgment, the Defendant concedes the first two prongs of this test.[6]

_____

    [6]As to the first element, although the Plaintiff had not worked for the
Defendant for the requisite 12 months (<u>see</u> 29 C.F.R. § 825.110), the Defendant

Doc. #14 at 7.  The Defendant further concedes that the Plaintiff was entitled to leave under the FMLA and that the Plaintiff gave notice of his intention to take leave, but only as to the days prior to May 27, 2008.  In support therefor, the Defendant points to the fact that the Plaintiff's entitlement to leave stopped on May 27, 2008, in accordance with the report received from Dr. Nwokoro that stated that the Plaintiff could return to work without restrictions on that date. Thus, the Defendant concludes, it gave the Plaintiff all of the FMLA benefits to which he was entitled prior to May 27, 2008, and he was not entitled to any such benefits from and after that date.

In response, the Plaintiff points to his original request for medical leave for abdominal surgery, beginning on May 5, 2008, with an "anticipated return" date of June 2, 2008.  He argues that "this request was never amended or edited by either . . . Dr. Nwokoro or by the employer." Doc. #15 at 8.  He also argues that the form used by Dr. Nwokoro to indicate that he was cleared to return to work on May 27 was a workers' compensation form and, thus, was not relevant to his stomach condition.[7] Id. at 9.

---

concedes, for purposes of summary judgment, that there may be an issue of fact as to whether the Plaintiff's work with a temporary employment agency doing work at the Defendant's facility counts toward the 12 month period. Doc. #14 at 7 n.4.

[7]The Plaintiff also attempts to argue that the Defendant did not request an Independent Medical Examination ("IME") to establish the necessity of his leave for abdominal surgery. Doc. #15 at 8-9.  The Plaintiff does not point to any law indicating that the Defendant had an affirmative duty to request such an

Upon consideration of the arguments made and evidence pointed to by the parties, the Court concludes that the Defendant's arguments are well taken, in that the Plaintiff has not pointed to evidence to demonstrate that he was entitled to FMLA leave from and after May 27, 2008, or that the Defendant interfered with his FMLA benefits prior to that date.

In order to be eligible for FMLA leave, an employee must suffer from a "serious health condition". 29 U.S.C. § 2612(a)(1)(D). The term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). The regulations in effect at the time of the incidents in question define "continuing treatment" as

> [a] period of incapacity . . . of more than three consecutive calendar days . . . that also involves . . . [t]reatment two or more times by a health care provider . . . or . . . [t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(1)-(2) (2003). According to the FMLA, an employer may require that a health care provider certify a request for FMLA leave, in order to verify that a patient/employee suffers from a serious health condition. 29 U.S.C.

---

examination and the Court is unaware of any such requirement, so the Court will disregard this argument, in ruling herein. Contrast 29 C.F.R. § 825.307(b) (providing that an "employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion") (emphasis added).

§ 2613(a).

As authorized by the FMLA, the Defendant required a health care provider to certify the Plaintiff's request for FMLA leave. Dr. Nwokoro originally certified the need for and the Defendant approved the Plaintiff's medical leave for abdominal surgery from May 5-June 2, 2008. The scheduled surgery never took place, thus negating the basis for that approved leave. The doctor also certified the need for and the Defendant had approved the Plaintiff's medical leave from April 3-May 16, 2008, for injuries sustained in the work accident. Thus, as of May 17, 2008, the Plaintiff was arguably no longer entitled to FMLA leave. For unexplained reasons, the Plaintiff did not return to work on May 17, 2008. On May 20, 2008, the Plaintiff attended a doctor's appointment, at which Dr. Nwokoro told him he was released to return to work without restrictions on May 27, 2008, and also advised him that he would be informing his employer of the same. The doctor then sent a report (albeit on what appears to be a Bureau of Workers' Compensation form) indicating that the Plaintiff could return to work with no restrictions (i.e., not indicating any restrictions due to abdominal issues) on May 27, 2008.

Rather than returning to work on May 27, 2008, the Plaintiff took a trip to Nigeria to visit his family. Upon returning from his trip, the Plaintiff once again was examined by Dr. Nwokoro, on June 2nd, who then prepared another form (which he annotated "Workers' Comp") indicating that the Plaintiff could return to work without restrictions on that day. The Plaintiff offers no evidence to indicate

whether or why Dr. Nwokoro changed his opinion about the May 27 return to work date (the June 2 form is a simple, pre-printed form that could function simply as a notice from the doctor's office that a patient/employee had been to an appointment that day and was returning to work from the same),[8] on June 2, 2008, and also offers no evidence to indicate if or when the Defendant became aware that the doctor had changed his opinion.

Any issue of material fact that may seemingly be created by these facts is resolved, in favor of the Defendant, however, upon acknowledgment of the fact that the basis of the FMLA leave for abdominal purposes was for an abdominal surgery, which never took place. Therefore, the only approved and proper FMLA leave to which the Plaintiff was entitled was from April 3 - May 16, 2008 (and arguably through May 26, which is when the doctor indicated he could return to work without restrictions), for injuries he sustained in the work accident.

These undisputed facts indicate that the Plaintiff was entitled to FMLA leave

---

[8]The form has blank lines for the date and the patient's name and then has three optional blocks for the doctor to check, to wit:

    1. Kindly excuse him/her from (school) (work) today
    2. He/She has been placed off of (school) (work) from _____ to _____
    3. He/She can return to (school) (work) (with) (without) restrictions

Doc. #15-1 at 14. As was previously mentioned, Dr. Nwokoro dated the form June 2, 2008, and then checked the third block, circling "(work)" and "(without)".

only through May 26, 2008.[9]  The Plaintiff offers no facts to indicate that the

Defendant in any way interfered with his FMLA leave during this period.

Given that there is no genuine issue of material fact as to whether the

Defendant interfered with the FMLA leave to which the Plaintiff was entitled, the

Defendant's Motion for Summary Judgment (Doc. #14) is SUSTAINED, as to the

FMLA interference claim.  The Court will now consider the Plaintiff's three

remaining claims, to wit:  retaliatory discharge in violation of Ohio Revised Code

§ 4123.90, FMLA retaliatory discharge and promissory estoppel.

### 3. Claims Previously Subject to Motion to Strike (Retaliatory Discharge in Violation of Ohio Revised Code § 4123.90 and FMLA Retaliation)

As previously decided by the Court, in this Opinion, the Plaintiff's Complaint

states valid claims for state law retaliatory discharge and FMLA retaliatory

discharge.  The Defendant, not having considered that the Complaint properly pled

these claims, did not specifically move for summary judgment on such. See Doc.

#14.  However, in response to the Plaintiff's clarification that he had included

these claims in his Complaint, the Defendant, in his memorandum in opposition to

---

[9]Upon his return from FMLA leave, the Plaintiff was also entitled to be restored to the position of employment he held when his leave commenced or to an equivalent position. 29 U.S.C. §§ 2612, 2614; Moorer v. Baptist Mem'l Health Care Sys., 398 F.3d 469, 486 (6th Cir. 2005).  There are no facts on the record to indicate that the Defendant was not prepared to restore the Plaintiff to the position of employment he held when his leave commenced or to an equivalent position, upon his expected date of return from FMLA leave (May 27, 2008).

the Defendant's Motion for Summary Judgment, attempts to argue that the claims should fail for various reasons. Doc. #15 (Mem. Opp'n); Doc. #16 (Reply Mem.). A party may not, however, submit new arguments in a summary judgment reply brief, since the adverse party must have a reasonable opportunity to respond to a moving party's summary judgment arguments. See Seay v. TVA, 339 F.3d 454, 481-82 (6th Cir. 2003); Fed. R. Civ. Proc. 56(c). Stated another way, a moving party is required to set forth the legal and factual bases for its motion for summary judgment, in its original memorandum in support thereof, so that the non-moving party may adequately respond in its opposition memorandum. Thus, the Court will not consider the Defendant's new arguments pertaining to these claims, made in the reply memorandum. As such, to the extent the same are included therein, the Defendant's Motion for Summary Judgment (Doc. #14) is OVERRULED, with regard to the claims for state law retaliatory discharge and FMLA retaliatory discharge.

In coming to this conclusion, the Court recognizes that the Defendant moved for summary judgment on the issue of FMLA interference, not specific to the retaliatory discharge claim, given that the Plaintiff also asserted a general FMLA interference claim, as part of Count 2. Given this fact, the Court considered analyzing the Defendant's arguments specific to the FMLA retaliatory discharge claim, in the context of an interference claim. However, much of the evidentiary support pointed to by the Defendant, in support of its arguments on this claim, has

not been entered into the record. E.g., Doc. #16 at 7 (pointing to Ihenacho

Deposition at pages 66-68, pages 71-72 and Exhibit L); id. at 8 (pointing to Exhibit

B, which does not contain information pertaining to time clock record on June 2,

2008).

Therefore, the Court orders the Defendant to file a properly documented,

Supplemental Motion for Summary Judgment, specific to the claim for FMLA

retaliation, and, at Defendant's option, for the claim of state law retaliatory

discharge.  If the Defendant chooses not to file said supplemental Motion,

Defendant's counsel must notify the Court, as instructed below.


4.    State Law Claims for Promissory Estoppel

Other than the two claims that were subject to the Motion to Strike

(retaliatory discharge, in violation of Ohio Revised Code § 4123.90, and FMLA

retaliatory discharge), the only claim remaining is the Plaintiff's state law claim for

promissory estoppel.   As instructed by the Sixth Circuit, "a federal court should

typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims

after dismissing the plaintiff's federal claims." Brown v. Cassens Transp. Co., 546

F.3d 347, 363 (6th Cir. 2008) (citing 28 U.S.C. § 1367(c)(3); United Mine Workers

of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966)).

Should the Court sustain the Defendant's Supplemental Motion for Summary

Judgment, with regard to the only remaining federal claim (FMLA retaliation), it will

be inclined to dismiss the remaining supplemental state law claims, without prejudice to refiling in a state court of competent jurisdiction. Therefore, in order to conserve valuable judicial resources at this time, the Court OVERRULES the Defendant's Motion for Summary Judgment, as it pertains to the claim for promissory estoppel, without prejudice to renewal in the Supplemental Motion for Summary Judgment. The parties are instructed that they need not submit additional arguments pertaining to the same, but may incorporate the arguments made with the Motion for Summary Judgment that is presently before the Court.

IV.     <u>Conclusion</u>

The Defendant's Motion to Strike (Doc. #17) is OVERRULED, in its entirely. The Defendant's Motion for Summary Judgment (Doc. #14) is SUSTAINED, as it pertains to the claims for termination in violation of public policy and for FMLA interference, and OVERRULED, as it pertains to the claims for state law retaliatory discharge, FMLA retaliatory discharge and promissory estoppel.

The Defendant is ordered to file a properly supported, Supplemental Motion for Summary Judgment, with regard to the claim for FMLA retaliation and, at the Defendant's option, with regard to the claims for state law retaliatory discharge and promissory estoppel. Such Supplemental Motion shall be filed (or Defense Counsel shall inform the Court of its intent not to so file) within fifteen (15) calendar days of the date of this Order. Opposing Counsel will then have fifteen (15) calendar days

in which to file a memorandum in opposition to such. A reply memorandum may be filed within eleven (11) calendar days after the date of filing of the memorandum in opposition.

February 10, 2010

   /s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record