IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES IHENACHO,                          :

    Plaintiff,                             :
                                    Case No. 3:08CV390

       vs.                                 :
                                    JUDGE WALTER HERBERT RICE

GREEN TOKAI CO. LTD.,                      :

    Defendant.                             :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT (DOC. #24)

---

The Defendant, Green Tokai Co. Ltd. ("GTC"), hired the Plaintiff, Charles Ihenacho, in August 2007. The present dispute between the parties involves GTC's termination of Ihenacho after he applied for workers' compensation benefits and upon his return from leave that had been granted under the Family Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.*, on June 2, 2008.

This is the Court's second Decision on a Motion for Summary Judgment filed by GTC. In its first such, the Court sustained GTC's Motion with regard to Ihenacho's claims for termination in violation of public policy and wrongful interference with rights granted under the Family Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq*. Doc. #23. In so doing, the Court concluded that the Plaintiff had pointed to no evidence to demonstrate that he was entitled to FMLA leave from and after May 27, 2008, or that the Defendant interfered with

his FMLA benefits prior to that date.  Therefore, at this point in the litigation, the following claims remain:  retaliatory discharge in violation of the FMLA; promissory estoppel; and retaliatory discharge in violation of Ohio Revised Code § 4123.90.  Doc. #2; Doc. #23.  GTC now moves for summary judgment on the two retaliatory discharge claims.[1] Doc. #24.

The Court will begin its analysis with a review of the pertinent facts of this case.  It will then set forth the standard that guides its decision and analyze the merits of the present Motion.

I.  <u>Facts</u>[2]

GTC hired Ihenacho as an at-will employee, in August 2007. Doc. #14-1 at 9, 10 (Ihenacho Dep. at 33,40); <u>id.</u> at 78 (Employee Handbook).  One of GTC's employment practices, of which Ihenacho was aware, was to terminate employees

---

[1] In its memorandum in support of its Supplemental Motion for Summary Judgment, GTC does not address the promissory estoppel claim. <u>See</u> Doc. #24.  It does, however, attempt to move for summary judgment on said claim, in its reply memorandum. Doc. #26 at 5.  A party may not, however, submit new arguments in a summary judgment reply brief, since the adverse party must have a reasonable opportunity to respond to a moving party's summary judgment arguments. <u>See</u> <u>Seay v. TVA</u>, 339 F.3d 454, 481-82 (6th Cir. 2003); Fed. R. Civ. Proc. 56(c).

[2] In general, these facts are recopied from the Court's previous Decision on the Defendant's original Motion for Summary Judgment. Doc. #23.  Further, since this case comes before the Court on the Defendant's Motion for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff, as the party against whom the Motion is directed. <u>Servo Kinetics, Inc. v. Tokyo Precision Instruments</u>, 475 F.3d 783, 790 (6th Cir. 2007).

who were excessively tardy or absent. Id. at 11 (Ihenacho Dep. at 41).

Prior to beginning employment with GTC, Ihenacho sustained abdominal injuries in an automobile accident. Id. at 6-7 (Ihenacho Dep. at 19-20). On April 4, 2008, Ihenacho applied for and GTC approved medical leave for abdominal surgery, beginning on May 5, 2008, with an "anticipated return" date of June 2, 2008. Id. at 82-87 (1st Med. Leave Request); id. at 21 (Ihenacho Dep. at 82); Doc. #14-2 (Kauffman Aff.) ¶3. The medical leave request packet that Ihenacho submitted contained the following language:

> I understand that my leave will end on the first day I am able to return to work as certified by my physician. I recognize my physician's date of anticipated return is tentative; however I agree to supply the company with an amended physician's certification in the event this date is changed. If I do not return from my leave on the date specified, I will be considered as having voluntarily resigned. The doctor's certification is the final arbitrator for the onset, and the termination of the leave itself.

Doc. #14-1 at 27 (Ihenacho Dep. at 90); id. at 82 (1st Med. Leave Request). Attached to Ihenacho's request for medical leave was a certificate from his physician, Dr. Ugo Nwokoro, attesting to the need for and dates of the surgical procedure. Id. at 85-87 (1st Med. Leave Request). While he was out on medical leave, the scheduled abdominal surgery was cancelled, due to complications from the injuries he sustained in the work accident described below. Doc. #15-3 at 29-31 (Ihenacho Dep. at 79-81).

The day before Ihenacho submitted his request for leave for abdominal

3

surgery, April 3, 3008, he injured his hip and side, in a work-place accident. Doc. #14-1 at 14-17 (Ihenacho Dep. at 44-47).  As a result of this injury, Ihenacho filed a claim for workers' compensation benefits, on May 26, 2008. Id. at 18 (Ihenacho Dep. at 59); Doc. #15-1 at 15 (Request for Workers' Comp.).  Ihenacho also requested medical leave for the injuries he sustained in the work-place accident, first asking for leave from April 3-11, 2008, and then asking for an extension until May 16, 2008. Doc. #14-1 at 23-26 (Ihenacho Dep. at 86-89); id. at 89-94 (2nd Med. Leave Request); id. at 102-07 (3rd Med. Leave Request).  The company granted both requests and Dr. Nwokoro once again completed the necessary paperwork, attesting to the medical necessity for the requested leave days. Id. at 89-94 (2nd Med. Leave Request); id. at 102-07 (3rd Med. Leave Request).

On May 20, 2008, Ihenacho had an appointment with Dr. Nwokoro (who was now treating him for both his stomach condition and his hip/side injury).  At this time, Dr. Nwokoro informed Ihenacho that he could return to work without restrictions on May 27, 2008. Id. at 29-30 (Ihenacho Dep. at 93-94).  The doctor also completed a "Physician's Report of Workability" (which appears to be a Bureau of Workers' Compensation form), whereon he indicated that Ihenacho "[m]ay [return to work with] with no restrictions on 5/27/08," and sent said report to GTC. Id.; id. at 111 (Workability Rpt.); Doc. #14-2 (Kauffman Aff.) ¶ 4.  There is no indication on the report that the doctor's instructions were specific to one or the other or both of the conditions for which he had been treating Ihenacho while

on medical leave. Ihenacho knew that the doctor sent a copy of the report to GTC. Doc. #14-1at 30 (Ihenacho Dep. at 94).

Sometime after his visit to Dr. Nwokoro, on May 20, 2008, Ihenacho took a trip to Nigeria to see his family, returning on May 29, 2008. Id. at 20 (Ihenacho Dep. at 75). When asked why he went to Nigeria, Ihenacho responded that he "rushed to see [his] parents" because he was "scared [he was] going to die," because of his health conditions. Doc. #15-3 at 30-31 (Ihenacho Dep.) at 80-81.

GTC relied on the Physician's Report of Workability it had received from Dr. Nwokoro and expected Ihenacho to report to work on May 27, 2008. Doc. #14-2 (Kauffman Aff.) ¶ 5. When he did not report to work on that day, GTC began charging attendance points for the days he did not work. The four absences on May 27-30, 2008, brought Ihenanco to a total of ten absences. Doc. #25-2 at 11 (Daily Att. Rec.). According to GTC, Ihenacho did not report to work on June 2, 2008, which was the final day to have accumulated sufficient points to warrant termination (e.g., he "pointed out" by having eleven absences) and, thus, GTC terminated him for excessive absenteeism. Doc. #14-2 (Kauffman Aff.) ¶ 6; Doc. #24-2 (Todd Aff.) ¶ 10; Doc. #25-2 at 1 (GTC Handbook). According to Ihenacho, however, he did clock in at work on June 2, 2008. Doc. #15-3 at 37 (Ihenacho Dep. at 104).

5

II.     Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such

6

that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S.

7

Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III.     Application of Summary Judgment Standard to Present Case

The Defendant moves for summary judgment on two of the Plaintiff's remaining claims, to wit: (1) retaliatory discharge in violation of the FMLA; and (2) retaliatory discharge in violation of Ohio Revised Code § 4123.90.[3] Doc. #23. The same analytical framework is used to assess both claims. Compare Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007) with White v. Mount Carmel Med. Ctr., 780 N.E.2d 1054, 1063-1064, 150 Ohio App. 3d 316 (Ohio 10th App. Dist. 2002). In order to prove a *prima facie* case of FMLA or § 4123.90 retaliation, a plaintiff must show that "(1) [he] engaged in a statutorily protected activity, (2)

---

[3]Ohio Revised Code § 4123.90 prohibits retaliation against employees for filing workers' compensation claims.

8

[he] suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity. Bryson, 498 F.3d at 570 (citing Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001)).  With regard to establishing a *prima facie* case of retaliation, the Sixth Circuit has stated that the burden "is not an onerous one and is easily satisfied." Russell v. Univ. of Toledo, 537 F.3d 596, 609 (6th Cir. 2008) (citing Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)).

If the plaintiff satisfies his *prima facie* burden, the burden then shifts to the defendant to demonstrate a "legitimate, non-discriminatory reason for the adverse employment action," after which the burden shifts back to the plaintiff "to show that the defendant's proffered reason is a pretext for unlawful discrimination." Bryson, 498 F.3d at 570 (citing Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 364 (6th Cir. 2007)).  "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (alteration in original)).

With regard to demonstrating pretext, the same may be shown "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Wright v. Murray Guard, Inc., 455 F.3d

9

702, 707-08 (6th Cir. 2006) (quoting Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1082 (6th Cir. 1994)).  The Sixth Circuit further instructs that in order for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." Id. (quoting Smith v. Chrysler Corp., 155 F.3d 799, 806-07 (6th Cir. 1998)).  Further, even if the employer is able to make such a showing, the protection afforded is not automatic. "[O]nce the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce 'proof to the contrary.'" Id. (quoting Smith, 155 F.3d at 807).

### A. *Prima Facie* Case of Retaliation

In the present case, there is no question that the Plaintiff has satisfied the first two prongs of his *prima facie* case, in that he engaged in protected conduct, by taking FMLA leave and by filing a workers' compensation claim, and that he suffered an adverse employment action when the Defendant terminated him.  The dispute between the parties pertains to whether the Plaintiff has set forth sufficient evidence to create a genuine issue of material fact on the third prong, i.e., whether there was a causal connection between his termination and the protected activity.  Specifically, the dispute centers on whether the temporal proximity between the exercise of the protected conduct and the adverse action is, alone, sufficient to

satisfy the causation element, in that temporal proximity is the only fact the Plaintiff asserts to support this part of his claim.[4]

The Defendant first argues that temporal proximity alone is not sufficient to satisfy the third prong of the Plaintiff's *prima facie* case of retaliation, but then concedes that courts have determined that, <u>in limited circumstances</u>, temporal proximity alone may be used to establish a *prima facie* case of retaliation. Doc. #24 at 7; Doc. #26 at 3-4. The Defendant points to, among cases from other

---

[4]The Plaintiff's arguments on this point are confusing. After setting forth the basic standard for judging retaliation claims, the emphasis of the cases he cites is properly on whether temporal proximity alone is sufficient to satisfy the causation element of such claims. Doc. #25 at 7-10 (FMLA claim); <u>id.</u> at 12 (§ 4123.90 claim). However, the Plaintiff follows this legal discussion with an argument pertaining to whether the Defendant wrongfully counted as absences the days he missed work on May 27-30 and June 2, 2008. <u>Id.</u> at 10-11 (FMLA claim); <u>id.</u> at 12-13 (§ 4123.90 claim). However, the Court has already considered the question of whether the Defendant wrongfully counted as absences the days he missed work on May 27-30, in its previous Decision pertaining to the FMLA interference claim. Doc. #23 at 15-20. Therein, the Court concluded that the Plaintiff was not entitled to FMLA leave on those days. <u>Id.</u> Further, neither party contends that he was entitled to FMLA leave on June 2, but rather argues about whether he was actually present at work that day. Therefore, as to whether the Defendant erred in counting June 2 as an absence day, that question is not relevant to the question of whether the Plaintiff's FMLA leave or workers' compensation claim caused his termination, although it will be relevant to the pretext discussion that follows.

The parties also briefly argue about whether the Plaintiff has set forth evidence to demonstrate that the Defendant had a "retaliatory state of mind." In so doing, the parties rely on an Ohio Appellate Court case, <u>Cunningham v. Steubenville Orth. & Sports Med., Inc.</u>, 888 N.E.2d 499, 511, 175 Ohio App. 3d 627 (Ohio 7th App. Dist. 2008), for the proposition that such is a requirement in order for a plaintiff to satisfy the third prong of a *prima facie* case of retaliation. Given that this Court can find no other court that has imposed such a standard, the Court refuses to add this requirement to those set forth above, which have been generally recognized by both the Sixth Circuit and Ohio courts.

courts, the Sixth Circuit's decision in Skrjanc v. Great Lakes Power Service Company, 272 F.3d 309, 317 (6th Cir. 2001), to support both of its contentions. In support of his position that temporal proximity, without more, is sufficient to establish the causation prong of a *prima facie* case of retaliation, the Plaintiff cites the Sixth Circuit's decisions in Nguyen v. City of Cleveland, 229 F.3d 559 (6th Cir. 2000), DiCarlo v. Potter, 358 F.3d 408 (6th Cir. 2004) and Asmo v. Keane, Inc., 471 F.3d 588 (6th Cir. 2006), among others. Doc. #25 at 8-9; 12.

      Sixth Circuit precedent on this issue is confusing. The Appellate Court has held both that proximity alone is sufficient to satisfy the causation element in a retaliation claim and also that proximity alone is not sufficient to satisfy the same. Without settling the confusion, the Appellate Court recently cited two of its previous opinions, pointing out that one held that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence" and that another noted the "previous [6th Circuit] cases that have permitted a prima facie case to be made based on the proximity of time." Imwalle v. Reliance Med. Prods., 515 F.3d 531, 550 (6th Cir. 2008) (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000) and Parnell v. West, 1997 U.S. App. LEXIS 12023, at *8 (6th Cir. May 21, 1997)); see also Tuttle v. Metro. Gov't, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim" (citations omitted)); DiCarlo, 358 F.3d at 421 ("[T]his

Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.").

Being left without clear direction from the Sixth Circuit, a study of the applicable decisions from this Circuit indicates that while temporal proximity is generally not sufficient, by itself, to establish a causal connection between the exercise of the protected conduct and the adverse action, there exists an exception to this general rule "where the temporal proximity between the protected activity and the adverse employment action is 'acutely near in time,'." Davison v. Roadway Express, Inc., 562 F. Supp. 2d 971, 983 (N.D. Ohio 2008) (finding a five-week gap sufficient to give rise to an inference of causality; quoting Matricardi v. Astro Shapes, Inc., 2007 U.S. Dist. LEXIS 75468 (N.D. Ohio Sept. 29, 2007), which cited DiCarlo, 358 F.3d 408 (three weeks between protected activity and adverse employment action constituted sufficient temporal proximity to raise an inference of causality) and Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309 (6th Cir. 2001) (one month between request for FMLA leave and termination constituted sufficient temporal proximity to raise an inference of causality)).

In this case, the Plaintiff's FMLA leave ended on May 26, 2008, and the Defendant terminated him seven days later, on June 2, 2008. Doc. #23 at 17. Also, the Plaintiff filed a claim for workers' compensation benefits on the same day

his FMLA leave ended, May 26, 2008.  Given that the temporal proximity between the protected activities and the adverse employment action is acutely near in time, the close proximity is deemed indirect evidence that permits an inference of retaliation.  Therefore, the Plaintiff has set forth sufficient evidence to create a genuine issue of material fact, as to each of the three prongs of his *prima facie* case of retaliation.

      B.     Legitimate, Non-Discriminatory Reason and Pretext

As its "legitimate, non-discriminatory reason" for terminating the Plaintiff, the Defendant asserts that he "pointed out" or had excessive absences and, thus, was terminated in accordance with company policy.  According to GTC policy, "Associates will be discharged upon accumulating 11 [absences]." Doc. #25-2 at 1.  The Defendant contends that the Plaintiff accrued his eleventh chargeable absence when he did not report to work on June 2, 2008, the day it terminated him.[5]  In arguing that the Defendant's stated reason is pretextual, the Plaintiff testifies that he <u>did</u> report to work on June 2, 2008, thus, negating the Defendant's assertion that he accrued his eleventh absence.

---

[5]The Defendant also makes an effort to argue that when the Plaintiff failed to report to work on the day after his FMLA leave ended (May 26, 2008), the company could have considered that he "voluntarily resigned", per the language on the medical leave request form. Doc. #24 at 7-8.  However, the Defendant's records indicate that it terminated the Plaintiff because he "pointed out", not because he was deemed to have voluntarily resigned his employment. Doc. #25-2 at 12.

14

As noted above, the Plaintiff may satisfy his burden of demonstrating pretext by "showing that the employer's proffered explanation is unworthy of credence." Wright v. Murray Guard, Inc., 455 F.3d 702, 707-08 (6th Cir. 2006). In the present case, there is clearly a genuine issue of material fact, on this point, given that each party has put forth contrary evidence on the critical issue of whether Ihenacho reported to work on June 2, 2008, thus casting doubt on whether the Defendant's proffered explanation is worthy of such credence or belief.  Because the Plaintiff has set forth sufficient evidence to satisfy his *prima facie* case of retaliation and to create a genuine issue of material fact as to whether the Defendant's legitimate, non-discriminatory reason for his termination is merely a pretext for retaliation, the Defendant's Supplemental Motion for Summary Judgment (Doc. #24) is OVERRULED.

IV.     Conclusion

The Defendant's Supplemental Motion for Summary Judgment (Doc. #24) is OVERRULED, in its entirely.

June 10, 2010

                                           /s/ Walter Herbert Rice
                                          WALTER HERBERT RICE, JUDGE
                                          UNITED STATES DISTRICT COURT

Copies to:
Counsel of record

15